# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

KRISTINA BORISHKEVICH, MINOR  )
CHILD 1, ERICA SWEENEY, MINOR  )
CHILD 2, STONEY MCCLEERY, MINOR )
CHILD 3                        )
                               )
      Plaintiffs,            )
                               )
      VS                     )
                               )
SCHOOL DISTRICT OF SPRINGFIELD R-12, )
SPRINGFIELD PUBLIC SCHOOLS     )
BOARD OF EDUCATION, SPRINGFIELD, )
MISSOURI, SPS SUPERINTENDENT   )
JOHN JUNGMANN,                 )
SCHOOL BOARD MEMBERS           )
ALINE LEHNERT, DENISE FREDRICK, )
GERRY LEE, JILL PATTERSON,     )
BRUCE RENNER, CHARLES TAYLOR,  )
SHURITA THOMAS-TATE            )
                               )
      Defendants.            )   Case No. 6:20-CV-03240-BP

## AMENDED VERIFIED COMPLAINT FOR TEMPORARY AND PERMANENT INJUCTIVE RELIEF AND DECLARATORY RELIEF

COMES NOW Kristina Borishkevich, Minor Child 1, Erica Sweeney, Minor Child 2, and Stoney McCleery, and Minor Child 3 Plaintiffs, by and through their attorney, Kristi S. Fulnecky, and file this complaint seeking declaratory and injunctive relief including a request for a Temporary Restraining Order (TRO) without notice and Permanent Injunction against the new Springfield Public School's Re-Entry Plan which was issued by the Springfield Public Schools, including agreement for the Plan by the Springfield Board of Education (Board) and its Board Members and the Springfield Superintendent who represents school administration. There are ten

defendants named in this lawsuit. The TRO is being requested WITHOUT notice, pursuant to Missouri Rules of Civil Procedure 92.02(b), as this is a true emergency and compelling reasons exist as explained later in the complaint.

## I. JURISDICTION AND VENUE

1. This court has jurisdiction over this lawsuit for declaratory and injunctive relief.

2. Venue is proper in this court, as the cause of action accrued in the City of Springfield, Greene County, where the Springfield Public Schools (SPS) Re-Entry Plan was authorized.

## II. PARTIES

3. Plaintiffs Kristina Borishkevich, Erica Sweeney, and Stoney McCleery are residents of the City of Springfield and their children attend Springfield Public Schools so they have standing. Minor Child 1 is Kristina Borishkevich's child and is age 8 years old, Minor Child 2 is Erica Sweeney's child and is age 7 years old, and Minor Child 3 is Stoney McCleery's biological child and is age 8 years old. The Clerk of the Court has the minor children's identities under confidential disclosure. Plaintiffs address for the purposes of this lawsuit is Fulnecky Law, 2733 E Battlefield Street, #211, Springfield, MO 65804.

4. Defendants include the School District of Springfield, R-12, Springfield Public Schools (SPS) Board of Education, John Jungmann who is the Superintendent of SPS, and the SPS Board Members: Alina Lehnert, Denise Fredrick, Gerry Lee, Jill Patterson, Bruce Renner, Charles Taylor, and Shurita Thomas-Tate. The SPS Re-Entry Plan was made public one week ago, Thursday, July 23, 2020.

5. All Defendants can be served at the SPS Headquarters Administration Kraft Building, 1359 E. Saint Louis Street, Springfield, Missouri 65802, phone 417-523-0026. A special process server is being requested to help out law enforcement.

6. Plaintiffs each have multiple reasons for filing suit which are listed below.

7. Plaintiff Kristina Borishkevich: Kristina is a parent of an autistic child who has attended SPS for the last three years. When her son started kindergarten, he was not able to speak or communicate with anyone. He was also lacking social skills. When he started Hickory Hills Elementary School, there was not much help for him there so they offered her family an opportunity to attend Wilder Elementary School because there was a classroom for special education children. That was the best decision for her family. Three years later, her son is continuing to improve greatly. He learned how to speak in order to make friends and has excellent teachers who care about him and his academic achievement. When SPS came out with the program for two days in school and three days online, Kristina was extremely frustrated because she knows her son will not be able to handle online work activities. She saw how hard it was for him during the Covid 19 shutdown of the state and schools. Kristina's worst fear for her son is that he will start regressing and his progress will be lost. Kristina wants the best for her child and is discouraged because of SPS's Plan of not allowing five days a week of in class learning. Other school districts have given parents the option of in class five days a week learning and she requests for SPS to do the same. Kristina's child, Minor Child 1, has regressed and needs to be in school five days a week.

8. Plaintiff Erica Sweeney: Erica is the mother to a six-year-old (almost seven-year-old) Autistic child that will be going into the First grade. Her daughter is very routine reliant, as most Autistic children are. Since 2017, when her daughter was accepted into the Shining Stars program, her daughter has attended school during both the normal school year and summer school. When the schools shut down after Spring Break, her daughter regressed tremendously. Erica started seeing more physical behaviors and more control issues from her

daughter. Erica attempted to do the virtual learning however her daughter did poorly. With her daughter's outbursts, Erica was never able to get her onto the "meetings" with the teacher. Erica's daughter has been attending the July session of summer school and to say it has been rough getting back into a routine is an understatement. Now at the end of July, Erica's daughter is finally getting back into a routine and she is going to have to start all over with this "Re-Entry Plan". With the Plan, Erica's daughter is set to go to seated class on Thursdays and Fridays. Due to her therapies on Fridays, she is unable to attend school on that day. This leaves only one day that she will be able to attend classroom sessions. This is just simply not enough. This will also violate her Individualized Educational Plan (IEP) as she will not be getting the services outlined in her IEP. Erica has attempted to get the days her daughter can attend school switched, however, she was told that is not an option. Erica's daughter needs the routine, structure, and social interaction that attending school every day provides. Erica's daughter, Minor Child 2, has suffered severe behavioral changes and has regressed in her disability and needs to be in school five days a week.

9. Plaintiff Stoney McCleery: Due to the SPS Plan to offer only two days of in-person service and the rest online or a completely online service, their family has faced decisions that put the education of their biological and foster children at risk. Stoney and his wife have endured a harsh decision to withdraw their biological child and enter her into a private school as an undue expense so she can obtain the in-person education that she needs, deserves, and has a constitutional right to. Due to the lack of resources by SPS, they will be forced to put their foster child online and spend several hours each evening ensuring that she gets the in-person learning, reinforcement, and support that she needs, deserves, and has a constitutional right to. The choice was between pursuing this direction or Stoney quitting his job to

homeschool his girls, creating an even greater undue financial burden. It was cheaper to send Minor Child 3, Stoney's child, to private school than to quit his job.

### III  OVERVIEW OF RE-ENTRY PLAN AND ISSUES

10. The Superintendent issued the Plan on Thursday, July 23, 2020 in response to the Covid crisis. As part of this plan, children will attend in classroom education for only two days a week and virtual for the other three days, depending upon the last name of the family.

11. Greene County has a very low death rate. With a death rate of .0038% in Greene County (11 deaths out of 293,086 citizens) and a death rate of .021% in Missouri (1,288 deaths out of 6.137 Million citizens), the death rate is not high enough for this extreme plan of not allowing children into the classroom full time.

12. There have not been any Covid deaths of children in either Greene County or in Missouri. The low death rate of Covid in Springfield and Greene County does not justify having in school learning for only two days. There should be a five day in school option.

13. This plan is very confusing and many parents have questioned why last names were used. This is also confusing for blended families with different last names.

14. There are many policy arguments supporting five day in class learning. The U.S. Dept of Ed is encouraging schools to open and get back to in-class learning. (*See* https://cdss.ca.gov/Portals/9/AdditionalResources/Research-and-Data/DSSDS/ChildCare-7-19.pdf)

15. The American Academy of Pediatrics (AAP) "strongly" recommended that the coming school year should start with a goal of having students physical present in school." (*See* American Academy of Pediatrics, COVID-19 Planning Considerations: Guidance for School Reentry, 3d para. (Last Updated June 25, 2020), https://services.aap.org/en/pages/2019-

novel-coronavirus-covid-19-infections/clinicalguidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/). The AAP noted the health benefits that occur from in person learning including reliable nutrition, opportunities for physical activity, mental health and speech therapy. It stated these could be lost from not having in class learning. (*See* American Academy of Pediatrics, COVID-19 Planning Considerations: Guidance for School Reentry, 1st para. (Last Updated June 25, 2020), https://services.aap.org/en/pages/2019-novel-coronavirus-covid-19-infections/clinicalguidance/covid-19-planning-considerations-return-to-in-person-education-in-schools/).

16. This Plan could be devastating to minorities and low-income children. The poverty rate was already extremely high in the City of Springfield before Covid hit. It will be extremely hard for low income children to pay attention and focus for online school if they do not know where their next meal is coming from.

17. This Plan does not address the parents whose children have learning disabilities and have an Individualized Educational Plan (IEP) granted by the schools. An IEP plan is a plan developed to ensure that a child who has a disability and attending an elementary or secondary educational institution receives specialized instruction and related services.

18. The economic impact to businesses because of a reduced workforce or trying to make accommodations for parents to work at home could be devastating. Also, the negative impact on parents who lose their jobs or can't find jobs because of the at home learning portion of the Plan is a very serious problem and crisis situation for parents and families. Additionally, this Plan schedule is overly burdensome on single parents who need to work and cannot do three days a week of virtual and homeschooling work.

19. Social isolation of students coupled with a lack of communication often leads to several mental health issues such as heightened stress, anxiety, and negative thoughts.

20. Keeping up with regular deadlines during online studies can become difficult for those students who lack strong self-motivation and time management skills.

21. Developing the communicational skills of the students is an area often neglected during online lessons. A lack of any kind of face-to-face communication with the instructor inhibits student feedback as well.

22. If children are restricted from daily in class learning, there is an increased risk of child abuse occurring at home and the highest reporters of abuse are teachers and others in the school system. Children in abusive home environments are subject to increased abuse. In one KY3 story on October 17, 2019, this news outlet reported that Greene County ranked above the state average for calls into the child abuse and neglect hotline with more than 7,700 calls, and this was before the Covid shutdown.

23. Some parents have been told that neighborhood pods for childcare would be set up but no one is sure who is organizing this and whether a license will be required. This would just further expose children to other children, increasing the virus exposure the school system is trying to prevent.

24. Some have concerns of teachers being exposed in the classroom to the virus but teachers should be deemed essential and critical and should be present in the classrooms.

25. The citizens of Springfield and the State of Missouri have rights of liberty and happiness and the rights to free public education. The State of Missouri levies property taxes from citizens and citizens in exchange are entitled as taxpayers to equal access to education and to services for their money paid. SPS is not offering a refund for reduced in-class learning.

26. During a video conference of ministers of education with the Council of the European Union on May 18, 2020, it was reported that since the reopening of schools in 22 member states, there had been no increase in infections of COVID-19 among students, teachers and parents. (*See* https://www.washingtonexaminer.com/news/22-eumember-states-have-not-seen-a-spike-in-coronavirus-cases-in-schools-after-reopening).

27. No evidence is given by the Superintendent or the School Board that there is a single child death in the school district due to Covid. Additionally, SPS has provided no evidence on why children should not be allowed to attend in person school five days a week.

28. The costs of this Plan and the devastating effects on the parents and children of Springfield far outweigh any benefits of supposed decreased exposure by the decreased in classroom attendance.

## IV OVERVIEW OF RELIEF SOUGHT

29. The Plaintiffs have brought this action challenging the Plan which has deprived them of numerous rights and liberties under both the Missouri and U.S. Constitutions.

30. This Action is brought pursuant to 42 U.S.C. § 1983, on the grounds that the SPS Plan and Defendants' enforcement thereof, violate Plaintiffs' constitutionally and federally protected rights, including specifically: (1) the right to equal protection, free from arbitrary treatment by the State (U.S. Const. 14th Amendment); (2) the right to procedural and substantive due process (U.S. Const. 14th Amendment); (3) the right to be free from federally-funded state action resulting in a disparate impact on racial minorities (Title VI of the Civil Rights Act of 1964, 42 U.S.C. 2000d, et seq.); (4) the right to equal and meaningful access to education, free from arbitrary state action resulting in a disparate impact on those with disabilities (Individuals with Disabilities Education Act, 20 U.S.C. § 1400, et seq.; Title II of the Americans with Disabilities

Act of 1990, 42 U.S.C. § 12131, et seq.; and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, et seq.)); (5) the right to free, public education under the Mo Rev Statutes Sec 160.051.1; (6) the right to a fair hearing under the due process clause (U.S. Const. 14th Amendment). The individual School Board members have also breached their fiduciary duty to their constituents, parents, and children.

31. Additionally, Plaintiff's constitutional rights are violated under the Missouri Constitution, Article I, Sec 2 (all persons have a natural right to …liberty…; all persons created equal and entitled to equal rights and opportunity under the law) and Article I, Sec 10 (no person shall be deprived of life, liberty or property without due process of law).

## V  COUNT I – TEMPORARY AND PERMANENT INJUNCTIONS

32. The requirements of a temporary restraining order (TRO) are immediate and irreparable injury, loss, and damage will result in the absence of relief. And a TRO can be granted if you are more likely than not to succeed.

33. In this case, Plaintiffs request the Court grants the TRO without notice, pursuant to the Missouri Rules of Civil Procedure 92.02(b). Section 92.02(b)(6) states that sanctions will result if a reasonable basis is not given as to the request and section 92.02(b)(1) allows the TRO without notice if notice would defeat the purpose of the order.

34. The TRO without notice should be granted because there is a state of emergency with the parents of these 25,000 school children trying to answer to employers, parents who are being laid off, and parents who can't find childcare because of the three days of virtual learning. As mentioned previously, Springfield families are struggling financially because of the Covid shutdowns and their financial futures are in jeopardy again because they face being laid off or not being able to find a job because of having to stay home to do virtual learning with their

children. Families are in a crisis financially and this Plan adds to their burdens.

35. Time is of the essence since parents are trying to figure out work schedules, their children's schedules, and childcare arrangements and school starts August 24.

36. This Plan is also stressful on the children psychologically, physically and emotionally and the best interest of the child is to have the option to attend in-class learning five days a week.

37. If the TRO is not granted, the Plaintiffs ask the Court to issue a permanent injunction. As stated previously, time is of the essence so parents can figure out child care and work arrangements due to this Plan implementation.

38. Plaintiffs will suffer immediate and irreparable injury, loss, and damage will result in the absence of relief. And a TRO can be granted if you are more likely than not to succeed. Because of the financial and scheduling crisis this Plan has created for the Plaintiffs and the parents of the SPS children, if a TRO is not granted, the named Plaintiffs and parents and children will suffer immediate injury for all the reasons stated in the above facts. Children in our community will continue to be isolated and be at risk for child abuse and other unhealthy results produced from this isolation.

39. There is no adequate remedy at law. Plaintiffs would like to request this Court issue a TRO, or in the alternative, issue a temporary injunction against the enforcement of this Plan.

VI  COUNT II – DECLARATORY JUDGEMENT

40.  Plaintiffs request this court to declare that this Plan violates the Plaintiff's civil rights under both the Missouri and U.S. Constitutions. Specifically, the violation of their guaranteed rights to liberty and equal rights under the Missouri Constitution. Missouri children have a right to equal access to education under Missouri law. By levying taxes from the Missouri taxpayers, the State also owes the taxpayers services in exchange for their taxes paid. SPS has not offered

to refund any property taxes to Springfield citizens from decreased in-class learning.

41. Plaintiffs have the right to a free public education under Mo Rev Statutes Sec 160.051.1. Plaintiffs are being denied this right since they are not being given the opportunity to attend school five days a week, as has been the practice for years.

42. Under the U.S. Constitution, the 14th Amendment, Plaintiff's constitutional rights have been violated by not providing equal access to education and not having the benefits that other school districts in the area will enjoy, namely five day in classroom learning.

43. There is a disparate impact on racial minorities which is cited in the Civil Rights Act of 1964. Minorities and low-income families will suffer by not being in the classroom and having the structure and access to socialization and nutrition.

44. Under the Americans with Disabilities Act of 1990, the Plaintiffs are denied equal access to an education for their children with disabilities.

45. There is no evidence given from the School Board or the Superintendent to justify such extreme measures as not allowing in-person learning five days a week. The physical, psychological, and emotional risks to children are too great to implement this Plan which does not allow an option for five day in-class learning. The multiple stresses parents face, financial and otherwise, is too great a burden to implement this Plan as it is. Parents should be given the choice of virtual or five day in classroom learning as other districts have chosen.

46. Education for these children Plaintiffs must be available on equal terms and the socialization process of being in a regular classroom affects children's wellbeing. As stated in a case about a student with an infectious disease, AIDS, *Dist. 27 Cmty. Sch. Bd. v. Bd. of Educ.* stated:

> Public education is not a fundamental "right" granted to individuals by the United States Constitution. *( San Antonio Ind. School Dist. v Rodriguez*, 411 U.S. 1, 35 [1973].) However, once the State, like New York, chooses to provide public education (NY Const, art 11, § 1), the right to an education "must be made available

to all on equal terms" ( *Brown v Board of Educ*., 347 U.S. 483, 493 [1954]). While the denial of attending the school of one's choosing is not tantamount to a denial of a right to education ( *Johnpoll v Elias*, 513 F Supp 430, 432 [EDNY]), the legal system recognizes educations' impact upon the "social * * * intellectual, and psychological well-being" of the child ( *Plyler v Doe*, 457 U.S. 202, 222 [1982]), and the benefits the child derives from the socialization process in the regular classroom. ( *Hairston v Drosick*, 423 F Supp 180, 183 [SD W Va 1976].) Dist. 27 Cmty. Sch. Bd. v. Bd. of Educ., 130 Misc. 2d 398, 416, 502 N.Y.S.2d 325, 337, 1986 N.Y. Misc. LEXIS 2413, *40

47. The School Board and its members did not hear public testimony and did not approve this Plan. This lack of public testimony from District parents and citizens violated the Plaintiffs' due process rights of receiving a fair process to approve the Plan.

48. Individual School Board members breached their fiduciary duty to the children and parents of the District by not allowing public testimony and not taking action on this Plan. As stated in the School District's Board Policy: "The Board of Education shall control all aspects of the operations of the district within the limits of the law…The Board shall be the final authority." https://simbli.eboardsolutions.com/SB_ePolicy/SB_PolicyOverview.aspx?S=177&Sch=177 (visited September 2, 2020).

49. The School Board also, according to their own policies:

> shall determine the policies to serve as a basis for the administration of the school district….Policies may be adopted, amended or rescinded only upon a majority vote of the members of the Board present at a legally constituted meeting in which the proposed policy or amendment has been included on the agenda and described in writing. Information about proposed policies or amendments will be provided to Board members in advance of the meeting where the policies will be discussed to permit time for study In most cases proposed policies or amendments will be presented as agenda items to the Board in two readings over a two-month period.
> https://simbli.eboardsolutions.com/SB_ePolicy/SB_PolicyOverview.aspx?S=177&Sch=177 (visited September 2, 2020).

50. The Board responsibilities continue: "the Board is accountable to the electorate, and shall be responsive to the educational needs and the imposed financial constraints of the district." In

the public relations section of its policy, it states, " The Board is responsible for providing adequate and direct means for keeping the district patrons informed about the schools, and for keeping itself and the school staff informed about the needs and wishes of the public." https://simbli.eboardsolutions.com/SB_ePolicy/SB_PolicyOverview.aspx?S=177&Sch=177 (visited September 2, 2020).

51. The Plan, with such great implications to the District's parents and children, should have been studied and heard over two readings, with an opportunity to hear from their constituents. School Board members are elected officials and should get feedback on important plans from their constituents. The Plan was improperly adopted and therefore, is not valid.

## VII CONCLUSION

WHEREFORE, Plaintiffs respectfully request this Court;

a. Grant the TRO without notice, or in the alternative, provide a TRO with notice and later permanent injunctive relief to stop the Plan from being implemented;

b. Provide an option for five day, in-person classroom learning;

c. Declare the Plaintiff's constitutional rights have been violated by the enactment of this Plan under both the Missouri and U.S. Constitutions;

d. Declare the Plan as currently written to be a violation of both the Missouri and US Constitutions because it does not allow five day a week in classroom learning;

e. Declare the Plan was improperly adopted and is not valid;

f. Declare the School Board members breached their fiduciary duties;

g. Award any and all attorney's fees and costs authorized by law;

h. Award all actual, consequential, punitive and special damages to which Plaintiff is entitled;

i. Such other relief as this Court deems just and necessary.

        Respectfully submitted,

        FULNECKY LAW, LLC

        By _/s/ Kristi Fulnecky_
        Kristi S. Fulnecky, MO Bar # 59670
        Attorney for Plaintiff
        2733 E. Battlefield Street, #211
        Springfield, Missouri 65804
        417-882-1044 phone

## CERTIFICATE OF SERVICE

Plaintiff has filed a request to serve Defendants by Special Process Server for the Complaint. If granted and after the Clerk issues the summons, Defendants will be served the Complaint by the Special Process Server.

## VERIFICATION STATEMENT

Under penalties as provided by law pursuant to the Missouri Rules of Civil Procedure 92.02(b)(2) for TRO's without notice, the undersigned Plaintiffs certify that the facts and statements set forth in the Complaint for Declaratory and Injunctive Relief are true and correct.

9-4-20
Date

_/s/ Ben___
Plaintiff Kristina Borishkevich

9-4-2020
Date

_/s/ Erica Sweeney_
Plaintiff Erica Sweeney

9.4.2020
Date

_/s/ Stoney McCleery_
Plaintiff Stoney McCleery